AGAPITO DÍAZ, Plaintiff and Appellee, v. VICTORIANA RAMOS ET AL., Defendants and Appellants.

No. 6993. Argued April 24, 1936.—Decided June 24, 1937.

L. *Santiago Carmona* for appellants.  *Dubón & Ochoteco* for appellee.

OPINION OF MR. JUSTICE WOLF, IN WHICH MR. JUSTICE TRAVIESO CONCURS.

One of the justices of this court is at present absent from the Island. Of the other four justices two favor an affirmance of the judgment and the others its reversal. Therefore the judgment of the lower court will stand. *Saldaña* v. *Municipal Council*, 15 P.R.R. 36.

This is a case wherein we refused to dismiss an appeal where the brief of the appellant failed to comply with the rules of the court; nor did we find that the appeal was clearly frivolous. Although the brief failed to contain an assignment of errors, the appellants have not yet corrected the brief. We shall discuss only the essential points involved.

800

■ We agree with the appellee that where a complaint shows the title of the plaintiff, a description of the property, and sets forth the precarious nature of the holding by the defendant, there is a *prima facie* showing of a cause of action in unlawful detainer.

■ The principal assignment of error is that the admitted facts show a conflict of titles. It is unquestionable that the predecessor in title of the plaintiff made a deed to the defendant Ramos of a house on the land now owned and claimed by the plaintiff. This deed was never recorded in the registry. At least there is nothing in the mandatory record to show the contrary. The said predecessor in title then conveyed the whole land to the plaintiff. The latter recorded his title in the registry of property. The two deeds are clear. One was an outright conveyance of the whole land and the other distinctly described only the house.

It is perfectly clear that where there is a double sale of real property the person who first records the deed is entitled to preference and his title, as a rule, prevails. Section 1362, Civil Code (1930 ed.). Where this is true of two deeds to the same entire property it must necessarily be true when the first purchaser acquires, perhaps not the title to the whole land, or any part of the land, but only the title to a house thereon. This is not the case where a defendant in possession of land builds a house thereon.

■ Defendant Ramos alleged that the plaintiff knew of the deed made to her by the plaintiff's grantor. In this appeal we shall not attempt to discuss whether such knowledge would prevent the plaintiff from recovering, because there was no evidence submitted at the trial tending to show that the plaintiff had such knowledge. He only admitted that defendant owned the house. Some equitable consideration might be given to defendant's ownership of the house, as the court below did, but that ownership ought not to prevent the success of a proceeding to secure possession of the whole premises.

The appellee cites the case of *Battistini & Martínez* v. *Feliciano,* 47 P.R.R. 196. That case, the writer thinks, has some application. The judgment was rendered by a divided court but the facts in favor of the defendant were totally distinct, as she had been the former owner of the property and had been allowed to remain in possession of the land and a house thereon. There was no showing of two independent sales as exists in the present appeal.

■ We agree with the appellee that as against a recorded conveyance of land, a previous unrecorded sale thereof raises no conflict of title, especially where by the unrecorded transfer only a house is distinctly alienated. As the legal situation is created by the express legislative mandate contained in section 1362 of the Civil Code, *supra,* the supposed conflict is out of the realm of the law. Of course, if a case should arise where the defendant not only claims and pleads a prior conveyance, but also pleads, and introduces evidence from which the trial court may infer, that the plaintiff in unlawful detainer purchased with actual knowledge of a prior deed of conveyance to the defendant, the disposition of the suit might differ. Under the present facts, however, section 1362, supra, leaves no room for conflict unless the letter of the law is not to prevail.

Let us suppose that *A* conveys to *B.* Some time later *B* sues *A* in an action of unlawful detainer. *A* replies that he is still the owner of the land. A slight examination shows that the deed is absolutely good and either recorded or recordable. Under these circumstances there is no conflict, although one could be plausibly claimed, or imagined, as was done in the actual case under consideration.

Of course, section 1362, *supra,* presupposes a conflict between two persons each claiming a title, but the said section resolves that conflict and leaves none in issue. If still a conflict is supposed, then it arises in each and every case in which there is a double sale and the unlawful detainer law is not available to the person with the true title.

The judgment in this case ordered a valuation of the house by the marshal, according to law, presumably referring to section 18 of the Unlawful Detainer Act (Act of March 9, 1905, Comp. Stat. 1911, sec. 1642, p. 316). Some doubt arose as to the power of the court to do this. The decision was probably within the equitable powers of the court and as no error is assigned we shall give the matter no further consideration.

The judgment appealed from should be affirmed.

Mr. Justice Córdova Dávila took no part in the decision of this case.

### OPINION OF MR. CHIEF JUSTICE DEL TORO, IN WHICH MR. JUSTICE HUTCHISON CONCURS.

In my judgment, this is not a case to be decided in an unlawful detainer proceeding. Agapito Díaz in his complaint alleged that he was the owner of a lot which he described and "that the defendant Victoriana Ramos is the owner of a small single story house which stands on said lot . . . and occupies a portion thereof measuring thirteen feet in width and twenty in depth, bounded on the north, east, and west by lands pertaining to the lot owned by the plaintiff and on its southern front by Dr. Veve Street."

He further alleged that the other defendant, Anastasio Olivero, lives in the house in question, and that both defendants are holding possession of said portion of his lot at sufferance, without paying any rent or charge, and upon these allegations he prayed for a judgment decreeing (a) the eviction of defendant Olivero from the building, (b) the valuation by the marshal of the house in the manner and for the purposes provided by law, (c) imposing on the defendants the payment of costs, disbursements, and attorney's fees, and (d) granting to the plaintiff any other remedy compatible with the pleading and with the evidence which will be introduced in due time.

The defendants demurred to the complaint for want of facts sufficient to constitute a cause of action and answered in substance denying the averments thereof and setting up as special defenses that the defendant Ramos, by a deed dated March 17, 1933, purchased the house in question from its owners, the spouses Ortiz, and since that date she has been and still is in possession thereof and of the land on which it is built; that the plaintiff knew that the defendant was the owner and had leased the house and the land, the premises being used as a shop, and that under those circumstances, the action of unlawful detainer brought by a person who "never acquired the actual delivery of the property" did not lie.

The judge set the first hearing for October 1, 1934, and on said date the plaintiff introduced in evidence deed No. 4, executed before Notary Pesquera on January 14, 1928, whereby the Municipality of Bayamón sold to Gregorio Ortiz Lot No. 1 of the improvement project (*urbanización*) which measured 375 square meters and faced Dr. Veve Street, and deed No. 7, executed before Notary Márquez on August 1, 1934, whereby Gregorio Ortiz and his wife sold the said lot to the plaintiff, Agapito Díaz, both deeds being recorded in the registry of property; and the defendants presented an unrecorded deed, No. 10, executed before Notary Pesquera on March 17, 1933, by which Gregorio Ortiz and his wife sold to the defendant Ramos the house built on said lot.

The second hearing was held five days later. From the record it appears that the following incident occurred:

"Plaintiff—The plaintiff wishes to state that he admits that the house to which the complaint refers is possessed by Victoriana Ramos as owner in good faith and that therefore he admits that there is good faith in relation to the said building."

The plaintiff offered in evidence the two deeds which were admitted without objection. Then the defendants said:

"Your Honor, we move for a dismissal of the complaint in the unlawful detainer proceeding because the plaintiff admitted that the defendant purchased from Gregorio Ortiz a house built on a lot which was not the property of Gregorio Ortiz."

The court asked both parties to submit briefs on the motion for nonsuit. The case was called again for hearing on October 27, 1934, and on the 10th of the following December it was decided by a judgment "decreeing that the defendants Victoriana Ramos and Anastacio Olivero be evicted within 20 days from a frame house . . . . situated on a parcel of land thirteen feet wide by twenty feet in depth and bounded on the north, east, and west by land of the adjacent lot," the lot of the plaintiff being described, and "that once the defendants are evicted from said house the same be valued by the marshal of this court for account of the defendant Victoriana Ramos, in the manner provided by law, for the purpose of making the corresponding appraisement of said building; the defendants to pay the costs of this suit."

Feeling aggrieved by that judgment, the defendants took an appeal to this court. They insist that when the house was sold and delivered to them, the land on which it stands was also sold and delivered to them.

The deed which they introduced in evidence is entitled "of purchase and sale of a house." The parties to it were Gregorio Ortiz and his wife Eugenia Erazo on the one hand, and Victoriana Ramos on the other. Ortiz and his wife stated that they were the owners of a lot which was described and which is the identical one that they subsequently sold to the plaintiff, and that on said lot they had built a single story frame house, zinc-roofed and measuring thirteen feet in width by twenty feet in depth, which they had agreed to sell. The sale took place immediately in accordance with the following clauses:

"First: The spouses Don Gregorio Ortiz and Doña Eugenia Erazo, do hereby truly and absolutely sell the house described in the first recital of this deed to doña Victoriana Ramos, for her to

hold as owner in the same manner in which the sellers have been possessing it without any reservation or limitation whatsoever.

"Second: This sale is made for the sum of two hundred and fifty dollars, which the sellers admit having received to their entire satisfaction from the purchaser prior to this act, and for which they grant the proper release in her favor.

"Third: The vendors give warranty in case of eviction in accordance with the law, the within deed serving to the purchaser as a token of possession.

"Fourth: The purchaser, with knowledge of this deed, and finding it correct, accepts it."

Was the land on which the house stands sold and delivered to the purchaser? Must it be considered that under the attendant circumstances the house is the principal thing and the land the accessory, as maintained in his brief by the appellant? The truth is that the deed should have been more clear on that point. Generally, when the land is not conveyed, the payment of some rental for the use thereof is specified. Section 64 of the Mortgage Law Regulations says: "In every record which relates to estates in which the soil belongs to one person and the building or the plantings to another, such fact shall be clearly stated." Herein the stipulation was that the purchaser would possess the house "as owner in the same manner in which the sellers have been possessing it," which might have induced the purchaser to believe at least that she would have the use and enjoyment of the land, since she was to possess the house in the same manner in which the sellers, who were owners of the house and lot, had been possessing it, without any reservation or limitation.

In these circumstances, does the action of unlawful detainer lie? We have already said that it does not.

The plaintiff alleged and proved that he was the owner of the entire lot, on a portion of which the house stands, but he alleged and admitted at the trial that the house did not belong to him but to the defendant Ramos who possessed it as owner in good faith. And we know the terms of the deed of conveyance.

Therefore, it is not the case of a double sale where the plaintiff claimed priority of title because the same has been previously recorded in the registry of property and where the principle is involved that the accessory, the house, follows the principal thing, the lot.

The plaintiff himself presented his case on the basis of the ownership of the house by the defendant Ramos and of her good faith in the possession of the same, in an attempt to adjust it to section 18 of the Unlawful Detainer Act, section 637 of the Code of Civil Procedure, 1933 ed., p. 263, which provides:

"The fact that the settler or tenant makes claim for work performed, plants, or any other thing which can not be removed from the property, shall not be an obstacle to his ejectment. In such case the marshal shall proceed to make the ejectment without delay, and after it has been effected, he shall, at the request of the interested party, proceed to make a valuation of the property at the cost of the claimant, after the appointment of an expert to be designated by the interested parties, by mutual consent; and in case of a disagreement, three experts shall be appointed, one by each of the parties and the third by the marshal. After the valuation has been made and the result thereof has been received by the marshal in writing signed by the experts, the interested and said official, it shall be returned to the court with the order of execution; the right being reserved to the defendant to bring an action before the proper court to recover the amount assessed, to which he thinks himself entitled."

The judgment of the district court was entered by applying the above legal provisions.

Are they applicable? In our judgment they are not, because it is not the case of a settler or tenant claiming for work performed, plants, or any other thing which can not be removed from the property, but of a house built by the owner of the land and sold by him to a person—the defendant Ramos—without any explanation, subsequently selling the land to another person—the plaintiff Ortiz—also without any explanation, and Ortiz acknowledged that he was the

owner of the land only and not of the house possessed by the defendant Ramos in good faith.

The deed of sale of the house failed to specify under what conditions the purchaser of the house would continue to use the land on which it stood. Not the slightest evidence has been introduced by any of the parties on that point. The plaintiff purchased the lot on which the house stands on August 1, 1934, with knowledge of the situation. His amended complaint appears filed on september 26, 1934, and hence his original complaint must have been filed shortly after his purchase. Nothing is known with regard to any demands. The case seems to have been taken immediately before the courts of justice in order to settle the existing conflict, choosing for this purpose the unlawful detainer proceeding, which, due to its summary character, is not in reality the proper one.

Here there is no perfectly clear right. Really it is an anomalous case to which section 297 of the Civil Code, 1930 ed., might be applicable. It reads:

"The owner of the land which has been built upon, sown, or planted in good faith, has the right to appropriate as his own, the work, sowing or planting, by previously paying the indemnity specified in sections 382 and 383 of this Code, and to oblige the person who has built or planted to pay him the value of the land, and the person who sowed, to pay the corresponding rent."

We say simply that it might be applicable because it was not the defendant who built, but could not the act of purchasing in the peculiar manner in which she bought, believing that she had a right to the land, be regarded as tantamount to the act of building on land which one believes to be his own, when in fact it is not?

There is a substantial difference between deciding the case under section 18 of the Unlawful Detainer Act, *supra,* and in deciding it by following the procedure prescribed by section 297 of the Civil Code, *supra,* because if the Unlawful Detainer Act is applied, the owner of the claimed property

is ejected without delay, with a right to claim afterwards the value thereon, while if the Civil Còde is applied, the owner of the building has an opportunity to consolidate his ownership by acquiring the land, and if he is refused that opportunity, the owner of the land, in order to acquire the building, must first pay to its owner the proper indemnity.

In virtue of the foregoing, and without finally deciding any of the questions raised, we think that the judgment appealed from should be reversed and the action dismissed, without special imposition of costs, and without prejudice to a decision of the existing conflict in the corresponding plenary action.